**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| NAPOLEON DENNIS, Individually and for Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>MEDTRONIC, INC., a Minnesota corporation<br><br>Defendant. | **Case No. ________________**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Napoleon Dennis (Dennis) brings this class and collective action to recover unpaid wages and other damages from Medtronic, Inc. (Medtronic) under the Fair Labor Standards Act (FLSA), the Minnesota Fair Labor Standards Act (MFLSA), and the Minnesota Payment of Wages Act (MPWA).

2. Dennis worked for Medtronic as an operator 1.

3. Medtronic employed Dennis as one of its Hourly Employees (defined below) in Minnesota.

4. Dennis and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. Medtronic pays them by the hour.

6. But Medtronic does not pay Dennis and the other Hourly Employees overtime wages at the required rates based on their true regular rates of pay.

7. Rather, Medtronic pays Dennis and the other Hourly Employees non-discretionary bonuses, including performance bonuses, that Medtronic excludes from their regular rates of pay for overtime purposes (Medtronic's "bonus pay scheme").

8. Medtronic's bonus pay scheme violates the FLSA, MFLSA, and MPWA by failing to compensate Dennis and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 (and 48) in a workweek.

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

11. This Court has general personal jurisdiction over Medtronic because it is a Minnesota corporation.

12. Venue is proper because Medtronic maintains its principal place of business in Minneapolis, Minnesota, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Medtronic employed Dennis as an operator 1 from approximately August 2023 until August 2025.

14. Throughout his employment, Medtronic subjected Dennis to its bonus pay scheme.

15. Dennis's written consent is attached as **Exhibit 1**.

16. Dennis brings this collective and class action on behalf of himself and similarly situated Medtronic employees.

17. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees who Medtronic paid under its bonus pay scheme during the last three years through final resolution of this action (the "FLSA Collective Members").**

18. Dennis also seeks to represent a class under the MFLSA and MPWA pursuant to FED. R. CIV. P. 23.

19. The putative Minnesota class of similarly situated employees is defined as:

> **All hourly employees in Minnesota who Medtronic paid under its bonus pay scheme during the last three years through the final resolution of this action (the "Minnesota Class Members").**

20. The FLSA Collective Members and Minnesota Class Members are collectively referred to as the "Hourly Employees."

21. Medtronic is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.

22. Medtronic may be served with process through its registered agent: **Corporation Service Company, 2780 Snelling Avenue N., Suite 101, Roseville, Minnesota 55113**.

## FLSA COVERAGE

23. At all relevant times, Medtronic was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

24. At all relevant times, Medtronic was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

25. At all relevant times, Medtronic was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

26. At all relevant times, Medtronic had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

27. At all relevant times, Dennis and the other Hourly Employees were Medtronic's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

28. At all relevant times, Dennis and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

29. Medtronic employs "95,000+ people across 150 countries" and touts that its "technologies reimagine the treatment of over 70 health conditions across four portfolios of solutions."[1]

30. To meet its business objectives, Medtronic employs workers, including Dennis and the other Hourly Employees, to operate and work on medical devices.

31. To this end, Medtronic advertises open job positions and solicits applications across its locations and facilities through its website.[2]

[1] https://www.medtronic.com/en-us/our-company/key-facts.html (last visited on January 26, 2026).
[2] https://www.medtronic.com/en-us/our-company/careers.html *and* https://medtronic.wd1.myworkdayjobs.com/MedtronicCareers (last visited on January 26, 2026).

32. For example, Medtronic employed Dennis as an operator 1 from approximately August 2023 until August 2025 in Medtronic's Plymouth, Minnesota facility.

33. Throughout his employment, Medtronic classified Dennis as non-exempt and paid him by the hour.

34. And throughout his employment, Dennis recorded his "on the clock" hours using the timekeeping system Medtronic selects and controls.

35. Thus, Medtronic's employment records reflect the number of "on the clock" hours Dennis recorded working each week.

36. Dennis's job duties included prepping necessary materials and operating two machines in an assembling line setting in the medical device manufacturing process.

37. Throughout his employment, Dennis regularly worked more than 40 hours (and more than 48 hours) in a workweek.

38. Throughout his employment, Dennis typically worked approximately 8 to 10 hours a day, 5 to 6 days a workweek (40 to 60 hours a workweek "on the clock").

39. Medtronic paid Dennis approximately $19 an hour.

40. Likewise, upon information and belief, the other Hourly Employees typically worked approximately 40 to 60 hours a workweek "on the clock."

41. But Medtronic does not pay Dennis and the other Hourly Employees at the required premium overtime rates—based on all remuneration—for all hours worked in excess of 40 (and 48) in a workweek.

42. Instead, Medtronic pays Dennis and the other Hourly Employees under its bonus pay scheme.

43. Specifically, Medtronic agrees to pay and subsequently pays Dennis and the other Hourly Employees non-discretionary bonuses, including performance bonuses, if they fulfill policies and criteria required by Medtronic.

44. But Medtronic excludes these bonuses from Dennis's and the other Hourly Employees' regular rates of pay for overtime purposes during the workweeks they earn the bonuses.

45. For example, during the pay period ending September 20, 2024, Medtronic paid Dennis an "OIP Operations Incentive," of $558.32, which it excluded from his regular rate of pay for overtime purposes during that pay period (as well as all others):

| Earnings | | | | | | |
|---|---|---|---|---|---|---|
| Description | Dates | Hours | Rate | Amount | YTD Hours | YTD Amount |
| Holiday Pay | | | | | 64 | 1,223.68 |
| OIP Operations Inc | 09/07/2024 - 09/20/2024 | | | 558.32 | | 1,519.27 |
| Other Paid Time | | | | | 48 | 912.00 |
| Overtime | 09/07/2024 - 09/20/2024 | 33.15 | 29.22 | 968.64 | 311.33 | 8,957.11 |
| Paid Time Off | | | | | 72 | 1,368.00 |
| Regular Hourly | 09/07/2024 - 09/20/2024 | 80 | 19.48 | 1,558.40 | 1449.09 | 27,763.11 |
| Recognize Tax As | 09/07/2024 - 09/20/2024 | | | 6.72 | | 35.96 |
| Earnings | | | | 3,192.08 | | 41,780.13 |

46. Thus, under Medtronic's bonus pay scheme, it does not pay Dennis and the other Hourly Employees overtime wages at the required rates—based on all remuneration—for all hours they work in excess of 40 in a workweek.

47. Similarly, Dennis worked in excess of 48 hours in a workweek during the pay period ending September 20, 2024, as well as other workweeks during which he earned non-discretionary bonuses excluded from his regular rate of pay.

48. Likewise, upon information and belief, other Hourly Employees worked in excess of 48 hours during workweeks they earn non-discretionary bonuses.

49. The Hourly Employees are thus uniformly subject to the same or similar unlawful policy—Medtronic's bonus pay scheme—for similar work.

50. As a result of its bonus pay scheme, Medtronic fails to pay Dennis and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for overtime hours in violation of federal and Minnesota law.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

51. Dennis brings his claims as a collective action under Section 216(b) of the FLSA and a class action pursuant to FED. R. CIV. P. 23 on behalf of himself and the other Hourly Employees.

52. Dennis and the other Hourly Employees are similarly victimized by Medtronic's bonus pay scheme.

53. Other Hourly Employees worked with Dennis and indicated they were subject to Medtronic's same or similar bonus pay scheme.

54. Based on his experience with Medtronic, Dennis is aware that Medtronic's bonus pay scheme was imposed on other Hourly Employees.

55. Dennis and the Hourly Employees are similarly situated in the most relevant respects.

56. Even if their job duties and locations vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required rates.

57. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

58. Rather, Medtronic's bonus pay scheme renders Dennis and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages.

59. Medtronic's records reflect the number of "on the clock" hours the Hourly Employees worked each week.

60. Medtronic's records further reflect that it paid the Hourly Employees non-discretionary bonuses it excluded from their regular rates of pay for overtime purposes during the workweeks the Hourly Employees earned and received these bonuses.

61. The back wages owed to Dennis and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

62. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Medtronic's records, and there is no detraction from the common nucleus of liability facts.

63. Therefore, the issue of damages does not preclude class or collective treatment.

64. Dennis's experiences are typical of the experiences of the other Hourly Employees.

65. Dennis has no interest contrary to, or in conflict with, the Hourly Employees that would prevent class or collective treatment.

66. Dennis has an interest in obtaining the unpaid wages and damages owed to the Hourly Employees under federal and Minnesota law.

67. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

68. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Medtronic will reap the unjust benefits of violating the FLSA, MFLSA, and MPWA.

69. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

70. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

71. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

72. Among the common questions of law and fact are:

a. Whether Medtronic paid the Hourly Employees non-discretionary bonuses;

b. Whether Medtronic engaged in a policy or practice of failing to include non-discretionary bonuses in the Hourly Employees' regular rates of pay for the purpose of calculating overtime under the FLSA and/or MFLSA;

c. Whether Medtronic failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for overtime hours worked;

d. Whether Medtronic's bonus pay scheme deprived the Hourly Employees of earned overtime wages on their regular paydays;

e. Whether Medtronic's decision not to pay its Hourly Employees all

wages, including overtime wages, was made in good faith; and

f. Whether Medtronic's violations were willful.

73. As part of its regular business practices, Medtronic intentionally, willfully, and repeatedly violated federal and Minnesota law with respect to the Hourly Employees.

74. There are many similarly situated Hourly Employees who have been denied overtime wages in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

75. This notice should be sent to the Hourly Employees pursuant to 29 U.S.C. § 216(b).

76. The Hourly Employees are known to Medtronic, are readily identifiable, and can be located through Medtronic's business and personnel records.

**MEDTRONIC'S VIOLATIONS WERE WILLFUL**

77. Medtronic knew it employed the Hourly Employees.

78. Medtronic knew it was subject to the FLSA's and MFLSA's overtime provisions.

79. Medtronic knew it was subject to the MPWA's earned wages provisions.

80. Medtronic knew Dennis and the other Hourly Employees were its non-exempt employees entitled to overtime wages.

81. Medtronic knew the FLSA required it to pay non-exempt employees, including Dennis and the other Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek and all the MFLSA required overtime wages after 48 hours worked in a workweek under.

82. Medtronic knew each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because Medtronic recorded their "on the clock" hours via its timekeeping system.

83. Medtronic knew it paid the Hourly Employees non-discretionary bonuses.

84. Medtronic knew these non-discretionary bonuses were not included in the Hourly Employees' regular rates of pay for overtime purposes during workweeks the bonuses were earned.

85. And Medtronic knew the FLSA required it to pay Dennis and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek and in excess of 48 in a workweek under the MFLSA.

86. Medtronic knew Dennis and the other Hourly Employees regularly worked in excess of 40 (and 48) hours a workweek.

87. Thus, Medtronic knew, should have known, or recklessly disregarded whether it failed to pay Dennis and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

88. Medtronic's failure to pay Dennis and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

89. Medtronic knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated the FLSA, MFLSA, and MPWA.

90. Medtronic knowingly, willfully, and/or in reckless disregard of the FLSA and Minnesota law carried out its unlawful bonus pay scheme that deprived the Hourly Employees of overtime wages at the required rates of pay—based on all remuneration—for all hours worked after 40 (and 48) in a workweek.

## COUNT I

### FAILURE TO PAY OVERTIME UNDER THE FLSA
### (FLSA COLLECTIVE)

91. Dennis brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

92. Medtronic violated, and is violating, the FLSA by employing non-exempt employees, such as the Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 in a workweek.

93. Medtronic's unlawful conduct harmed the Hourly Employees by depriving them of the overtime wages they are owed.

94. Accordingly, Medtronic owes Dennis and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

95. Because Medtronic knew or showed reckless disregard for whether its bonus pay scheme violated the FLSA, Medtronic owes Dennis and the other Hourly Employees these wages for at least the past 3 years.

96. Medtronic is also liable to Dennis and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

97. Finally, Dennis and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action

## COUNT II

### FAILURE TO PAY WAGES UNDER THE MPWA
### (MINNESOTA CLASS)

98. Dennis brings his MPWA claims as a class action on behalf of himself and the other Minnesota Class Members pursuant to FED. R. CIV. P. 23.

99. Medtronic's conduct violated and continues to violate the MPWA. *See* Minn. Stat. § 181.01 *et seq*.

100. At all relevant times, Medtronic employed each Minnesota Class Member as its covered "employees" within the meaning of the MPWA. *See* Minn. Stat. §§ 177.22-23.

101. At all relevant times, Medtronic was subject to the MPWA because Medtronic was (and is) an "employer" within the meaning of the MPWA. *See* Minn. Stat. § 181.171 Subd. 4.

102. The MPWA requires employers, such as Medtronic, to pay all earned wages to employees, such as the Minnesota Class Members, at least once every 31 days on a payday designated in advance. Minn. Stat. § 181.101; *see also* Minn. Stat. §§ 181.13 (penalties for discharged employees), 181.14 (penalties for employees who quit or resign).

103. Wages "means compensation due to an employee by reason of employment," and wages are earned on the day employees perform work on behalf of an employer. Minn. Stat. §§ 177.23 Subd. 4 and 181.101.

104. Medtronic, pursuant to its bonus pay scheme, has failed to timely pay the Minnesota Class Members all earned wages at the required rates on its designated paydays.

105. By failing to timely pay the Minnesota Class Members all their earned wages at the required rates under federal and Minnesota law, Medtronic violated and continues to violate, the Minnesota Class Members' statutory rights under Minnesota law. Minn. Stat. §§ 181.101 181.13, 181.14, and 181.171.

106. Medtronic's actions were willful and not the result of mistake or inadvertence and therefore a 3-year statute of limitation applies. *See* Minn. Stat. § 541.07(5).

107. Medtronic's unlawful conduct harmed the Minnesota Class Members by depriving them of earned wages, including earned overtime wages under the FLSA and MFLSA, in violation of Minnesota law.

108. The Minnesota Class Members are entitled to recover their unpaid earned wages that remain unpaid in violation of Minnesota law plus civil penalties, and attorney's fees and costs. Minn. Stat. §§ 181.101, 181.13, 181.14, and 181.171.

## COUNT III

### FAILURE TO PAY OVERTIME UNDER THE MFLSA (MINNESOTA CLASS)

109. Dennis brings his MFLSA overtime claim as a class action on behalf of himself and the other Minnesota Class Members pursuant to FED. R. CIV. P. 23.

110. Medtronic's conduct violated and continues to violate the MFLSA. *See* Minn. Stat. § 181.01 *et seq*.

111. At all relevant times, Medtronic employed each Minnesota Class Member as its covered "employees" within the meaning of the MFLSA. *See*, Minn. Stat. §§ 177.22 and 177.23 subd. 7.

112. At all relevant times, Medtronic was subject to the MFLSA because Medtronic was (and is) an "employer" within the meaning of the MFLSA. *See*, Minn. Stat. § 177.23 Subd. 6.

113. The MFLSA requires "[n]o employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed." Minn. Stat. § 177.25.

114. Minnesota Administrative Rules require calculating "the regular rate of pay … by dividing the employee's remuneration in any workweek by the total hours worked." Minn. R. 5200.0130.

115. Medtronic, pursuant to its bonus pay scheme, has failed to pay the Minnesota Class Members overtime wages of at least 1.5 times their true regular rates of pay for all hours worked in excess of 48 in a workweek.

116. Medtronic required the Minnesota Class Members to work "workweek[s] longer than 48 hours but failed to pay them "at a rate of at least 1-1/2 times the regular rate at which the employee is employed … in excess of 48 hours in a workweek." Minn. Stat. § 177.25.

117. By failing to pay the Minnesota Class Members their earned overtime wages at the required rates, Medtronic violated and continues to violate, the Minnesota Class Members' statutory rights under Minnesota law. *Id.*

118. Medtronic's unlawful conduct harmed the Minnesota Class Members by depriving them of earned overtime wages in violation of Minnesota law.

119. Medtronic's actions were willful and not the result of mistake or inadvertence and therefore a 3-year statute of limitation applies. *See* Minn. Stat. § 541.07(5).

120. The Minnesota Class Members are entitled to recover the difference between the wages actually paid and the overtime wages actually earned, plus an equal amount as liquidated damages, and attorney's fees and double costs. Minn. Stat. §§ 549.03 and 177.27, Subds. 7, 8, 10.

## COUNT IV

### FAILURE TO MAINTAIN ACCURATE PAYROLL RECORDS UNDER THE MFLSA (MINNESOTA CLASS)

121. Dennis brings his MFLSA inaccurate payroll records claim as a class action on behalf of himself and the other Minnesota Class Members pursuant to FED. R. CIV. P. 23.

122. Medtronic's conduct violated and continues to violate the MFLSA. *See* Minn. Stat. § 181.01 *et seq*.

123. At all relevant times, Medtronic employed each Minnesota Class Member as its covered "employees" within the meaning of the MFLSA. *See* Minn. Stat. §§ 177.22 and 177.23 subd. 7.

124. At all relevant times, Medtronic was subject to the MFLSA because Medtronic was (and is) an "employer" within the meaning of the MFLSA. *See* Minn. Stat. § 177.23 Subd. 6.

125. Medtronic has not maintained accurate payroll records for the Minnesota Class members as required by Minnesota law.

126. Employers, such as Medtronic, must make and keep a record of the name, address, and occupation of each employee, the rate of pay and the amount paid each pay

period to each employee, and the hours worked each day and each workweek by the employee. Minn. Stat. § 177.30(a)(1-3).

127. The statute requires employers to keep these records for three years. *Id.* at (8).

128. Medtronic violates the MFLSA by failing to accurately make and keep accurate records of the rate of pay and the amount of pay actually earned by the Minnesota Class Members.

129. Instead, Medtronic inaccurately under records the Minnesota Class Members' regular rates of pay, overtime rates of pay, and total wages earned because it unlawfully excludes non-discretionary bonuses from the calculation of their regular rates of pay for overtime purposes.

130. The Minnesota Class Members relied on Medtronic's records to accurately reflect their earned wages, including overtime wages, in compliance with Minnesota law.

131. Medtronic's inaccurate records have harmed the Minnesota Class Members by concealing its underpayment of earned wages and falsely informed them that Medtronic has paid all compensation owed, which has impeded the Minnesota Class Members' ability to remedy this underpayment in a timely manner.

132. This has further concretely harmed the Minnesota Class Members by causing them to lose the time value of their earned but unpaid wages and eliminated their ability to recover at all, due to the running of the relevant statute(s) of limitation, for numerous workweeks in which Medtronic underpaid them.

133. Accordingly, the Minnesota Class Members are entitled to civil penalties for each such violation.

134. The Minnesota Class Members may seek damages and other appropriate relief that may alternatively be sought by the Commissioner and as otherwise provided by law. *See*, Minn. Stat. §§ 127.30 and 177.30, Subd. 8.

135. Thus, the Minnesota Class Members may seek "up to $1,000 for each failure to maintain records as required by [Minn. Stat. § 177.30], and up to $5,000 for each repeated failure." *See id.*

136. Furthermore, the Minnesota Class Members are entitled to an award of "reasonable costs, disbursements, witness fees, and attorney fees." Minn. Stat. § 177.27, Subd. 10.

## JURY DEMAND

137. Dennis demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Dennis, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order certifying a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Dennis and his counsel to represent the interests of the Minnesota Class Members;

d. An Order finding Medtronic liable to Dennis and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Medtronic liable to Dennis and the Minnesota Class Members for all unpaid earned wages, overtime wages, liquidated damages, civil penalties, compensatory damages, and any other damages available under the MPWA and/or MFLSA;

f. A Judgment awarding Dennis and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, civil penalties, and any and other penalties available under the FLSA, MFLSA, and/or MPWA;

g. An Order awarding attorneys' fees, costs, and expenses to the Hourly Employees;

h. An Order awarding pre- and post-judgement interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: January 30, 2026

Respectfully submitted,

**NICHOLS KASTER PLLP**

By: */s/ Michele R. Fisher*
Michele R. Fisher
MN Bar No. 303069
80 South 8th Street, Suite 4700
Minneapolis, MN 55402
Phone: (612) 256-3200
Fax: (612) 338-4878
fisher@nka.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLC**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR DENNIS & THE HOURLY EMPLOYEES**